**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA MOLENDA, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>HUNGRYROOT, INC.,<br><br>        Defendant. | Civil Action No. 1:23-cv-00678<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Lisa Molenda ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant HungryRoot, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme with respect to its subscription plans for HungryRoot (collectively, the "HungryRoot Subscriptions") through its website at https://www.hungryroot.com/ and on its mobile application (the "HungryRoot Website" and the "HungryRoot App," respectively).

2. Defendant is a food subscription service. Relevant to Plaintiff's allegations, when consumers sign up for HungryRoot Subscriptions at the HungryRoot Website or on the HungryRoot App, Defendant actually enrolls consumers in a program that automatically renews customers' HungryRoot Subscriptions from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card, debit card, or third party payment account (collectively, "Payment Method"). In doing so, however, Defendant fails to provide the

1

requisite disclosures and authorizations required to be made pursuant to California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*.

3.     Pursuant to the ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (a) obtain affirmative consent prior to the consumer's purchase; (b) provide the complete auto-renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase; and (c) provide an acknowledgment identifying an easy and efficient mechanism for consumers to cancel the subscriptions. As will be discussed below, the enrollment process for the HungryRoot Subscriptions, which can be completed through the HungryRoot Website, HungryRoot Apps, and/or HungryRoot Website, uniformly violates each of these requirements. Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their HungryRoot Subscriptions.

4.     Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 17602(a)(3) and 17602(b). Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b). As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts"

under the ARL. Cal. Bus. & Prof. Code § 17603.

5.      Accordingly, Plaintiff brings this action individually and on behalf of all California purchasers of any of Defendant's HungryRoot Subscription offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their HungryRoot Subscriptions. Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) conversion; (iii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iv) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (v) unjust enrichment/restitution; (vi) negligent misrepresentation; and (vii) fraud.

## THE PARTIES

6.      Plaintiff Lisa Molenda is a citizen of California who resides in Van Nuys, California, Los Angeles County.

7.      Defendant HungryRoot is a Delaware Corporation with its principal place of business located at 7 West 22nd Street, Floor 6, New York, New York 10010. Defendant markets to consumers through the HungryRoot Website and App. Defendant is also responsible for the promotion, advertisement, and/or marketing of the automatically renewing subscription plans and it owns and operates the HungryRoot Website and App, where it markets and sells it's the HungryRoot Subscriptions. Defendant sells The HungryRoot Subscriptions in California and has done business throughout California, and throughout the United States, at all times during the Class Period. Defendant also made automatic renewal or continuous service offers to consumers

in California, and throughout the United States, via the HungryRoot Website and/or App during the Class Period.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

10.      Venue is proper is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Also, Defendant is a resident of this District as Defendant is headquartered within this District.

## FACTUAL ALLEGATIONS

## I.      BACKGROUND ON THE SUBSCRIPTION E-COMMERCE MARKET

11.      The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[1] Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years. Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to

---

[1] *See* https://www.coredna.com/blogs/ecommerce-subscription-services.

subscription services[.]"[2] Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.[3] That constitutes an average annual growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally."[4]

12.     The production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years. According to Forbes, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[5] Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[6] "As such, the financials of companies with

---

[2] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

[3] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%."). *See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (Apr. 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits?* (Oct. 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right-now-but-are-you-reaping-the-full-benefits-02434851.

[4] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra* ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); *see also* Juniper Research, *Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally* (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[5] *The State Of The Subscription Economy, 2018*, Forbes (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[6] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[7] Thus, "[t]he share prices of most subscription companies have performed well in recent years."[8]

13.     The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover. During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[9] According to *The Washington Post*, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[10]

14.     However, as the *Washington Post* has noted, there are downsides associated with the subscription-based business model.[11] While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[12]

---

[7] *Id.*

[8] *Id.*

[9] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

[10] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[11] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[12] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-

In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[13] Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[14] As these companies have realized, "[t]he real money is in the inertia."[15] As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative designs."[16] That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, "are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans. They do this by [among other things] intentionally confusing users with their [website or] app's design and flow, by making promises of 'free trials' that convert after only a matter of days, and other misleading tactics," such as failure to fully disclose the terms of its automatic-renewal programs.[17]

15.     To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a

---

telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[13] *Id.*

[14] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[15] *Id.*

[16] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.

[17] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

subscription marketing plan."[18] Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[19] Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts[ and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[20] widespread utilization of misleading dark patterns and deliberate omissions persist. A dark pattern is "a user interface carefully crafted to trick users into doing things they might not otherwise do, such as … signing up for recurring bills."[21]

16.     Defendant has successfully implemented these tactics. Indeed, Defendant's recent growth in revenues and subscriber count with respect to its HungryRoot Subscriptions coincides with a sharp decline in subscriber satisfaction as the HungryRoot Subscriptions and the platforms from which they operate have become riddled with "dark patterns." Specifically, Defendant has been using various types of dark patterns, including but not limited to "roach motel,"[22]

---

[18] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

[19] *Id.*

[20] *Id.*

[21] *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull (PhD Cognitive Science), who coined the term "Dark Patters" in August 2010).

[22] "Roach motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)." https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

"misdirection,"[23] and "forced continuity," [24] in order to prevent user unsubscription from the HungryRoot Subscriptions by adopting complex cancellation procedures to increase the friction in the subscription cancellation process. Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully disclose the terms of its automatic-renewal programs (discussed further below) – has led to a reduction in churn rates by making it next to impossible for subscribers to cancel their HungryRoot Subscriptions. It has further led to an increase in accidental or unintentional sign-ups by consumers for paid HungryRoot Subscription plans, in effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.

## II.   CALIFORNIA'S AUTOMATIC RENEWAL LAW

17.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600 (statement of legislative intent). More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

---

[23] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another."  In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]"  https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[24] One example of "forced continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning.  [The subscriber is] are then not given an easy way to cancel the automatic renewal."  https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

18.     The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.
>
> (2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.
>
> (3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

19.     Section 17602(c) of the ARL further provides:

> A business that makes an automatic renewal offer or continuous service offer shall provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(c).

20.    Additionally, following the 2018 and 2022 amendments to the ARL, the updated

law requires e-commerce sellers doing business in California to allow online cancellation of

auto-renewing memberships or recurring purchases that were initiated online. Specifically,

Section 17602(d) provides:

> [A] business that allows a consumer to accept an automatic
> renewal or continuous service offer online shall allow a consumer
> to terminate the automatic renewal or continuous service
> ***exclusively online, at will, and without engaging any further
> steps that obstruct or delay the consumer's ability to terminate
> the automatic renewal or continuous service immediately***.

Cal. Bus. & Prof. Code § 17602(d)(1) (emphasis added).

21.    The updated ARL also requires a seller who provides an automatic offer that

includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the

auto-renewal before they are charged. Sellers must also explain the price to be charged when the

promotion or free trial ends. If the initial offer is at a promotional price that is only for a limited

time and will increase later, the seller must obtain consumer consent to the non-discounted price

prior to billing.

22.    Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or

arrangement in which a paid subscription or purchasing agreement is automatically renewed at

the end of a definite term for a subsequent term." Cal. Bus. & Prof. Code § 17601(a).

23.    Section 17601(b) of the ARL defines the term "Automatic renewal offer terms"

as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing

agreement will continue until the consumer cancels. (2) The description of the cancellation

policy that applies to the offer. (3) The recurring charges that will be charged to the consumer's

credit or debit card or payment account with a third party as part of the automatic renewal plan or

arrangement, and that the amount of the charge may change, if that is the case, and the amount to

11

which the charge will change, if known. (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer. (5) The minimum purchase obligation, if any." Cal. Bus. & Prof. Code § 17601(b).

24.      Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

25.      Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent," the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business." Cal. Bus. & Prof. Code § 17603.

26.      As alleged below, Defendant's practices on the HungryRoot/Vendor Websites and Apps systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the ARL.

## III.   DEFENDANT'S BUSINESS: THE SUBSCRIPTION ENROLLMENT PROCESS

27.      At all relevant times, Defendant offered, via the HungryRoot Website and App, various HungryRoot Subscriptions for *The HungryRoot*, a publication available in digital formats. These paid subscriptions are offered on a recurring basis for monthly and/or yearly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels. For example, customers that sign up for a *monthly* The HungryRoot Subscription are, at the end of the initial one-month period, automatically renewed and typically charged the full amount for the next month, and every month thereafter if they do not cancel.

12

Defendant's HungryRoot Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code §§ 17600, *et seq.*

28.     Consumers can sign up for one of Defendant's subscription plans through the HungryRoot Website, on either its mobile or desktop format, or Defendant's mobile application. Defendant provides monthly and/or yearly subscription plans. Customers who purchase an HungryRoot Subscription via the HungryRoot Website or App are automatically enrolled by Defendant in their chosen HungryRoot Subscription program going forward, by default.

29.     The enrollment process for the HungryRoot Subscriptions is substantially the same, regardless of the medium used. For instance, after selecting one of the HungryRoot Subscription plans, those navigating the enrollment process on the HungryRoot Website are prompted to create an account. Consumers are directed to a final webpage (the "Checkout Page"), where prospective subscribers are prompted to input their payment information and then invited to complete their purchase. For the purposes of the ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity to the request for consent to the offer," which in this case pertains to text nearby the final checkout button at the bottom of the Checkout Page that customers must click in order to complete the checkout process. The following is an accurate picture of the Checkout Page:[25]

---

[25] https://www.hungryroot.com/checkout/shipping/ (last visited January 23, 2023).



30.     On the Checkout Page depicted above, when a consumer signs up for a monthly HungryRoot Subscription, the "relevant portion of the Checkout Page" refers to the disclosures in the block of text immediately adjacent to the "Place Order" button (*i.e.*, the "request for consent").

31.     Regardless of how the consumer subscribes (via the HungryRoot Website or the HungryRoot Apps), and irrespective of which specific HungryRoot Subscription plan the subscriber selects, Defendant fails to adequately disclose the terms of its auto-renewal programs either before or after checkout, and it never requires the individual consumer to read or affirmatively agree to any terms of service, *i.e.*, by requiring consumers to click a checkbox next

to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for their HungryRoot Subscriptions. Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – its subscribers before charging consumers' Payment Methods on a recurring basis.

## IV.    DEFENDANT VIOLATES CALIFORNIA'S AUTO RENEWAL LAW

32.    At all relevant times, Defendant failed to comply with the ARL in three ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant charged Plaintiff's and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).

### A.    Defendant Fails To Clearly And Conspicuously Present The HungryRoot Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.

33.    First, the relevant portion of the Checkout Page does not present the complete "automatic renewal offer terms," as defined by Cal. Bus. & Prof. Code §17601(b), in violation of Section 17602(a)(1) of the ARL. Specifically, Defendant fails to present a complete "description of the cancellation policy that applies to the offer." Cal. Bus. & Prof. Code § 17601(b)(2). For instance, the Checkout Page does not mention *how* subscribers can cancel their subscription or by *when* cancellation must be affected in order to avoid further renewal charges for the

subsequent subscription periods. Nothing on the Checkout Page gives the autorenewal terms for the purchaser to review or see, the user is only instructed to insert their payment information and click "Place Order." Hence, the Defendant clearly fails to present a complete "description of the cancellation policy that applies to the offer" as it fails to provide any cancellation information whatsoever on the Checkout Page.

34.     For the same reasons, Defendant's Checkout Page also fails to does not clearly and conspicuously disclose: that the HungryRoot Subscription "will continue until the consumer cancels" (Cal. Bus. & Prof. Code § 17601(b)(1)); "[t]he recurring charges that will be charged" to the subscriber's Payment Method each billing period (*id*. § 17601(b)(3)); or "[t]he length of the automatic renewal term" (*id*. § 17601(b)(4)).

**B.     Defendant Fails To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With The HungryRoot Subscriptions.**

35.     Second, at no point during the checkout process does Defendant require consumers to read or affirmatively agree to any terms of service associated with their HungryRoot Subscriptions, *e.g.*, by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process.

36.     Accordingly, when Defendant automatically renews customers' The HungryRoot Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

**C.     Defendant Fails To Provide A Post-Checkout Acknowledgment That Includes Clear And Conspicuous Disclosures Of Required HungryRoot Subscription Offer Terms.**

37.     Finally, after Plaintiff and the members of the Class subscribed to one of Defendant's HungryRoot Subscription plans, Defendant sent to Plaintiff and the Class email

16

follow-ups regarding their purchases (the "Acknowledgment Email"). The Acknowledgment Email contains even less of the required information than is featured on the relevant portion of the Checkout Page, discussed above. Namely, the Acknowledgment Email does not provide: that the HungryRoot Subscription "will continue until the consumer cancels," Cal. Bus. & Prof. Code § 17601(b)(1); a "description of the cancellation policy that applies to the offer," *id*. § 17601(b)(2); a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change[, and,] if that is the case, and the amount to which the charge will change," *id*. § 17601(b)(3); or "[t]he length of the automatic renewal term," *id*. § 17601(b)(4). As such, the Acknowledgment Email fails to "include[] the automatic renewal offer terms … , cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer" in violation of Section 17602(a)(3) of the ARL.

38.     In sum, Defendant's deficient pre- and post-purchase disclosures and lack of affirmative consent fail to comply with the ARL. By and through these actions, Defendant has charged Plaintiff's and Class members' Payment Methods in direct violation of the ARL. As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

39.     Because Defendant failed to disclose this material information in the manner required by statute, Plaintiff was unable at the point of sale to accept or provide affirmative consent to Defendant's offer or knowingly enter into to the purchase agreements. Thus, as a direct result of Defendant's missing, incomplete, and otherwise deficient disclosures on the Checkout Page and in the Acknowledgment Email, Plaintiff was induced to sign up for, unable

to terminate, and automatically charged for their HungryRoot Subscriptions.

**PLAINTIFF'S INDIVIDUAL ALLEGATIONS**

40.     Plaintiff Lisa Molenda is an individual consumer who purchased a monthly

HungryRoot Subscription from Defendant's website while in California or around February of

2021. Ms. Molenda signed up for her HungryRoot Subscription at the promotional or discounted

rate. At the time of enrollment, Ms. Molenda provided her payment information directly to

Defendant.

41.     Before Ms. Molenda purchased her HungryRoot Subscription, Defendant did not

disclose to Ms. Molenda all required automatic renewal offer terms associated with the

subscription program. Additionally, although the Checkout Page from which Ms. Molenda made

her purchase included some relevant information regarding automatic renewal, the manner in

which this information was presented was insufficient to put Ms. Molenda on notice.

Specifically, prior to completing her initial HungryRoot Subscription order, the relevant screens

and buttons presented to Ms. Molenda did not clearly and conspicuously state that her

HungryRoot Subscription would automatically renew every month until she cancelled, and they

did not describe the full cancellation policy that applied to her purchase.

42.     After Ms. Molenda completed her initial order, Defendant sent Ms. Molenda an

acknowledgment email that her HungryRoot Subscription had been activated. However, that

acknowledgement email failed to provide Ms. Molenda with the complete automatic renewal

terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or

information regarding how to cancel Ms. Molenda's HungryRoot Subscription in a manner

capable of being retained by her. Ms. Molenda did not receive any other acknowledgements that

contain the required information.

43.     As a result of Defendant's missing and otherwise deficient disclosures, when Ms. Molenda selected and paid for her discounted HungryRoot Subscription in or around, she was unaware that Defendant enrolled her in an "automatic renewal" program under which the subscription would renew each month at varying rates unless Ms. Molenda chose to cancel.

44.     On November 22, 2022 Ms. Molenda believed she cancelled her subscription online. On November 25, 2022, Ms. Molenda saw that her credit card had been charged $131 by Defendant for her next shipment under the HungryRoot Subscription and her order was in the process of being shipped to her home.

45.     Then, Ms. Molenda then checked to see if she ever had received a cancellation email from Defendant confirming her cancellation. After checking her email account, Ms. Molenda learned she never had received such an email despite cancelling her account.

46.     Ms. Molenda reached out to customer support multiple times for Defendant to cancel her subscription from HungryRoot and has not heard anything regarding her cancellation status.

47.     In sum, Ms. Molenda's card was charged a number of unauthorized times by Defendant until her last payment on November 25, 2022.

48.     As a direct result of Defendant's unlawful conduct described above, Plaintiff suffered economic injury. Specifically, Defendant's ARL violations caused Plaintiff's financial injury because she reasonably relied on Defendant's conspicuous disclosures of the Checkout Page and the Acknowledgment Email (and, as a natural corollary, Defendant's omissions and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase her HungryRoot Subscriptions in the first place and whether to continue paying for it after that (*i.e.*, by not cancelling the auto-renewal). Had Defendant complied with the ARL by adequately

disclosing – and obtaining Plaintiff's affirmative consent to – the requisite HungryRoot

Subscription terms on the Checkout Page at the point of Plaintiff's initial enrollments, she would

have been able to read and review the auto renewal terms prior to purchase and she would have

not subscribed to HungryRoot, thereby avoiding financial injury of any kind as a result of

Defendant's ARL violations.

49.     Similarly, had Defendant complied with the ARL by adequately disclosing the

terms associated with Plaintiff's HungryRoot Subscriptions in the post-checkout

Acknowledgment Email (*i.e.*, after initial enrollment but before any one of the several times

Defendant subsequently automatically renewed Plaintiff's HungryRoot Subscription and charged

her Payment Method accordingly), she would have been able to read and review the auto renewal

terms prior to renewal, and she would have canceled her HungryRoot Subscription prior to the

expiration of the subscription period in which she learned such information, thereby avoiding all

or part of the automatic renewal charges Plaintiff incurred from during the life of her

HungryRoot Subscription. But Defendant did not adequately disclose the required automatic

renewal terms in either the Checkout Page or the Acknowledgment Email, thereby depriving

Plaintiff of the opportunity to make an informed decision as to the transaction.

50.     The facts giving rise to Plaintiff's claims are materially the same as the Class she

seeks to represent.

## **CLASS ACTION ALLEGATIONS**

51.     Plaintiff brings this action pursuant to Federal Rule 23 on behalf of a class of

similarly situated individuals, defined as follows (the "Class"):

> All persons in California who, within the applicable statute of
> limitations period, up to and including the date of final judgment in

this action, incurred renewal fee(s) in connection with Defendant's HungryRoot Subscriptions.

52.     Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

53.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

54.     **Numerosity:** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class comprises at least tens or hundreds of thousands of consumers throughout California. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

55.     **Commonality and Predominance:** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's The HungryRoot Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and Class members' Payment Method for an automatic renewal service without first obtaining their affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof. Code § 7602(a)(2); (d) whether Defendant failed to provide an

acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*., and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (g) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiff and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiff and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

56.     **Typicality:** The claims of Plaintiff's are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to comply with Cal. Bus. & Prof. Code §§ 17600, *et seq*., in connection with its HungryRoot Subscription offerings.

57.     **Adequacy:** Plaintiff will fairly and adequately protect Class Members' interests. Plaintiff has no interests antagonistic to Class Members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

58.     **Superiority:** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions

of individual actions are economically impractical for members of the Class; the Class is readily

definable; prosecution as a class action avoids repetitious litigation and duplicative litigation

costs, serves judicial resources, and ensures uniformity of decisions; and prosecution as a class

action permits claims to be handled in an orderly and expeditious manner.

59.     Defendant has acted or failed to act on grounds generally applicable to the Class,

thereby making appropriate final injunctive relief with respect to the Class as a whole.

60.     Without a class action, Defendant will continue a course of action that will result

in further damages to Plaintiff and members of the Class and will likely retain the benefits of its

wrongdoing.

61.     Based on the foregoing allegations, Plaintiff's claims for relief include those set

forth below.

**<u>COUNT I</u>**
**Violations Of California's Unfair Competition Law ("Ucl"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

62.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the

preceding paragraphs as though alleged in this Count.

63.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendant.

64.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or

fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and

any act[.]" Cal. Bus. & Prof. Code § 17200.

65.     The UCL allows "a person who has suffered injury in fact and has lost money or

property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204.

Such a person may bring such an action on behalf of himself or herself and others similarly

23

situated who are affected by the unlawful and/or unfair business practice or act.

66.     As alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class.

67.     Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq*. Specifically, Defendant failed, and continues to fail, to: (a) provide the auto-renewal terms associated with its HungryRoot Subscription "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and [with] visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Method, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3). Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their HungryRoot Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

68.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

69.     All products received from Defendant in violation of the ARL, Cal. Bus. Prof.
Code §§ 17602, *et seq*., constitute "unconditional gifts." *See* Cal. Bus. Prof. Code § 17603. As a
direct and proximate result of Defendant's unlawful and/or unfair practices described herein,
Defendant has received, and continues to hold, unlawfully obtained property and money
belonging to Plaintiff and the Class in the form of payments made by Plaintiff and the Class for
the HungryRoot Subscriptions. Defendant has profited from its unlawful and/or unfair acts and
practices in the amount of those business expenses and interest accrued thereon. Defendant's acts
and omissions as alleged herein violate obligations imposed by statute, are substantially injurious
to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as
the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

70.     Defendant's conduct was unfair in that in violated established public policies of
the State of California, and injured consumers with no corresponding benefit to consumers or
competition.  Indeed, there can be no benefit to consumers or competition in Defendant's
illegally marketing of subscription services.  Consumers could not avoid the injury alleged herein
because Defendant failed to adequately disclose it subscription services and did not provide a
method of cancelation. There were reasonably available alternatives to further Defendant's
legitimate business interests, other than the conduct described herein.

71.     Defendant's acts, omissions, nondisclosures, and misleading statements as alleged
herein were and are false, misleading, and/or likely to deceive the consuming public. Plaintiff
and the members of the Class have suffered a substantial injury in fact and lost money by virtue
Defendant's acts of unfair competition, which caused them to purchase the HungryRoot
Subscriptions. Had Defendant complied with its disclosure obligations under the ARL, Plaintiff
and members of the Class would not have purchased their HungryRoot Subscriptions or would

have cancelled their HungryRoot Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees. Additionally, Defendant refused to honor cancelation requests and provide a reasonable method of cancelation.  Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's fraudulent, unlawful and/or unfair business practices.

72.     Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct. The public and the Class are subject to ongoing harm because the fraudulent, unlawful and/or unfair business practices associated with the HungryRoot Subscriptions are still used by Defendant today. Defendant does not disclose its subscription services, and does not provide a reasonable method of cancelation.  Additionally, Defendant does not honor the cancelation requests received.

73.     In the alternative to any damages, Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's Payment Method in connection with their HungryRoot Subscriptions during the four years preceding the filing of this Complaint.

74.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant. This includes an order requiring Defendant to establish a reasonable method of cancelation, requiring Defendant to honor those cancelation requests it receives in a timely manner, providing corrective notices to current customers regarding Defendant's cancelation policies (as well as instructions on how to cancel their subscriptions), providing corrective notices to current and future customers

regarding the nature of the subscriptions as required by law, and/or rescinding customers' subscription agreements.  Additionally, Plaintiff seeks an order establishing that goods provided by Defendant under its illegal subscription plan constitute "unconditional gifts" as required by Cal. Bus. Prof. Code § 17603.

75.     Legal remedies are not adequate to remedy the injury alleged herein.  First, it is unknown if monetary damages will be awarded by the Court.  Second, the injury to Plaintiff and the Class stems from Defendant's failure to provide reasonable notice to consumers and establish a reasonable method of cancelation.  Without such notice, method of cancelation, and/or rescission, customers will continue to be injured by Defendant's business practices.  Absent such remedies, customers will continue to pay under Defendant's illegal subscription agreements and will not have a reasonable avenue to cancel their subscriptions.  Accordingly, the Court should provide equitable remedies to prevent future harm to Plaintiff and other members of the Class.

76.     Plaintiff brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

## COUNT II
**Conversion**

77.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

78.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

79.     As a result of charges made by Defendant to Plaintiff's and Class members' Payment Methods without authorization and in violation of California law, Defendant has taken

money that belongs to Plaintiff and the Class.

80.     The amount of money wrongfully taken by Defendant is capable of identification.

89. Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or

malice within the meaning of Cal. Civil Code § 329(c)).

81.     As a result of Defendant's actions, Plaintiff and the Class have suffered damages.

### COUNT III
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*

82.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the

preceding paragraphs as though alleged in this Count.

83.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendant.

84.     California's FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful

for any person to make or disseminate or cause to be made or disseminated before the public in

this state, … in any advertising device … or in any other manner or means whatever, including

over the Internet, any statement, concerning … personal property or services, professional or

otherwise, or performance or disposition thereof, which is untrue or misleading and which is

known, or which by the exercise of reasonable care should be known, to be untrue or

misleading."

85.     Defendant committed acts of false advertising, as defined by § 17500, by

intentionally making and disseminating statements to consumers in California and the general

public concerning Defendant's products and services, as well as circumstances and facts

connected to such products and services, which are untrue and misleading on their face and by

omission, and which are known (or which by the exercise of reasonable care should be known)

by Defendant to be untrue or misleading. Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

86.     Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's HungryRoot Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments. Such representations and omissions on the Checkout Page constitute false and deceptive advertisements.

87.      Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

88.     Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their HungryRoot Subscriptions, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions. Plaintiff and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's HungryRoot Subscription. They relied on Defendant's statements and omissions to their detriment.

89.     Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the HungryRoot Subscriptions on the same terms if the true facts were known about the product and the HungryRoot Subscriptions do not have the characteristics as promised by Defendant.

90.     Plaintiff, individually and on behalf of all similarly situated California consumers,

seek individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property. The restitution sought is in alternative to any monetary damages. Injunctive relief should include an order requiring Defendant to establish a reasonable method of cancelation, requiring Defendant to honor those cancelation requests it receives in a timely manner, providing corrective notices to current customers regarding Defendant's cancelation policies (as well as instructions on how to cancel their subscriptions), providing corrective notices to current and future customers regarding the nature of the subscriptions as required by law, and/or rescinding customers' subscription agreements. Additionally, Plaintiff seeks an order establishing that goods provided by Defendant under its illegal subscription plan constitute "unconditional gifts" as required by Cal. Bus. Prof. Code § 17603.

91.    Legal remedies are not adequate to remedy the injury alleged herein. First, it is unknown if monetary damages will be awarded by the Court. Second, the injury to Plaintiff and the Class stems from Defendant's failure to provide reasonable notice to consumers and establish a reasonable method of cancelation. Without such notice, method of cancelation, and/or rescission, customers will continue to be injured by Defendant's business practices. Absent such remedies, customers will continue to pay under Defendant's illegal subscription agreements and will not have a reasonable avenue to cancel their subscriptions.  Accordingly, the Court should provide equitable remedies to prevent future harm to Plaintiff and other members of the Class.

92.    Plaintiff brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this

action.

## COUNT IV
### Violations of of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

93.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

94.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

95.    Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

96.    Defendant's selection and/or subscription offers are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

97.    The acts and practices of Defendant as described above were intended to deceive Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class. These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the HungryRoot Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

98.    Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase HungryRoot

Subscriptions on terms to which they would not have agreed and pay renewal fees they would

not have otherwise paid. Had Defendant fully and clearly disclosed the terms associated with the

HungryRoot Subscriptions, Plaintiff and the Class would have not subscribed to HungryRoot at

all or on materially the same terms, or they would have cancelled their HungryRoot

Subscriptions earlier, *i.e.,* prior to the expiration of the initial subscription period and/or any

subsequent subscription period thereafter, thereby avoiding all or part of the subscription charges

they incurred during the lifetimes of their HungryRoot Subscriptions.

99.     Plaintiff, on behalf of herself and all other members the Class, seeks an injunction

prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

100.     In compliance with the provisions of California Civil Code § 1782, Plaintiff sent

written notice to Defendant on January 25, 2023, informing Defendant of her intention to seek

damages under California Civil Code § 1750. The letter was sent via certified mail, return receipt

requested, advising Defendant that it was in violation of the CLRA and demanding that it cease

and desist from such violations and make full restitution by refunding the monies received

therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons

similarly situated." Accordingly, if Defendant fails to take corrective action within 30 days of

receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages

as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

### COUNT V
### Negligent Misrepresentation / Omission

101.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the

preceding paragraphs as though alleged in this Count.

102.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendant.

103.    As discussed above, Defendant made misrepresentations and omissions to consumers before and after enrollment in Defendant's HungryRoot Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments. Such representations and omissions on the Checkout Page constitute false and deceptive advertisements. Defendant omitted, failed to disclose, and intentionally concealed from such advertisements and related statements material facts concerning billing, shipping, cancellation, and automatic payment terms, policies, and requirements.

104.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

105.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the HungryRoot Subscriptions and the associated terms.

106.    The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase and enroll in Defendant's HungryRoot Subscription program.

107.    Plaintiff and Class members would not have purchased the HungryRoot Subscriptions if true facts had been known.

108.    The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.      For an order certifying the Class, naming Plaintiff as a representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.      For an order declaring that Defendant's conduct violates the statutes and common laws referenced herein;

C.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.      For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  January 26, 2023                    Respectfully submitted,

                                    **BURSOR & FISHER, P.A**.

                                    By: ___*/s/ Frederick J. Klorczyk III*_____

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
Julia K. Venditti *
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com
         jvenditti@bursor.com

Nick Suciu III *
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@milberg.com

Gary Klinger *
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

J. Hunter Bryson *
Zoe T. Aaron *
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Telephone: (630) 796-0903
Email: hbryson@milberg.com
         zaaron@milberg.com

*Attorneys for Plaintiff and the Putative Class*
*\* Pro Hac Vice application forthcoming*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Frederick J. Klorczyk III, declare as follows:

1.        I am an attorney at law licensed to practice in the State of New York and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Lisa Molenda ("Plaintiff") in this action.  Plaintiff alleges that she is a citizen of Van Nuys, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.        The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of New York.  Additionally, Defendant has its principal place of business in this District.

I declare under the penalty of perjury under the laws of the State of New York and the United States that the foregoing is true and correct and that this declaration was executed at New York, New York, this 25th day of January, 2023.

                                        */s/ Frederick J. Klorczyk III*
                                        Frederick J. Klorczyk III